UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
---------------------------------------------------------
RONALD O. BATTLE,

               Plaintiff,           Case No.:

      -against-               **COMPLAINT**


MASS TRANSPORTATION AUTHORITY,

               Defendant.
---------------------------------------------------------

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action charging that Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), and the Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq. ("ELCRA"), to recover lost wages, emotional distress damages, punitive damages, reasonable attorneys' fees and costs as a result of being discriminated against on the basis of his disability and weight, and retaliated against for opposing discriminatory practices.

2.    Plaintiff was subjected to disability discrimination, including disparate treatment based on his physical disabilities and weight, denial of reasonable accommodations, failure to engage in the interactive process, and constructive demotion from his position as a bus driver to a janitorial position resulting in a significant reduction in wages and benefits.

1

3. Plaintiff was further subjected to unlawful retaliation after filing charges of discrimination with the Equal Employment Opportunity Commission, including delayed return to work following completion of required training and ultimate termination of his employment.

4. This complaint seeks to remedy the disability discrimination, weight discrimination, and retaliation in the form of equitable relief, back pay, front pay, compensatory damages for emotional distress, punitive damages, reasonable attorneys' fees and costs, and other relief as the Court deems just and proper.

## ADMINISTRATIVE REQUIREMENTS

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge No.: 471-2024-04085) on April 23, 2024, alleging discrimination based on disability and weight.

6. Plaintiff simultaneously cross-filed his charge of discrimination with the Michigan Department of Civil Rights ("MDCR") on April 23, 2024.

7. The EEOC charge was filed with the Detroit Field Office of the EEOC and was assigned to Investigator Kassidy Smith.

8. On June 20, 2025, Plaintiff filed a second charge of discrimination with the EEOC (Charge No.: 471-2025-05874) alleging retaliation for his prior charge of discrimination and was assigned to Investigator Tina Griffin.

9.      On May 1, 2025, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue on his first charge of discrimination (Charge No.: 471-2024-04085). The Notice of Dismissal and Right to Sue for this Charge is attached hereto as Exhibit 1.

10.     On July 2, 2025, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue on his second charge of discrimination (Charge No.: 471-2025-05874). The Notice of Dismissal and Right to Sue for this Charge is attached hereto as Exhibit 2.

11.     This complaint is timely filed within the ninety-day period after receipt of both Right to Sue notices, with the first charge's filing deadline being July 30, 2025, and the second charge's filing deadline being September 30, 2025.

12.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## THE PARTIES

13.     Plaintiff, Ronald O. Battle, is an individual residing in Flint, Michigan, at 616 E. Taylor Street, Flint, MI 48505.

14.     Plaintiff was employed by Defendant as a City Fixed Route Transit Operator (bus driver) from September 13, 2021, until his unlawful termination on October 25, 2024. Plaintiff was initially hired as a part-time employee and was promoted to "TEMP FT" (Temporary Full Time) status on January 9, 2023.

15.    Defendant, Mass Transportation Authority ("MTA"), is a public transportation authority organized and existing under the laws of the State of Michigan, with its principal place of business located at 1401 South Dort Highway, Flint, MI 48503.

16.    At all times relevant hereto, Defendant employed more than one hundred fifty (150) employees and was an "employer" within the meaning of the Americans with Disabilities Act and the Elliott-Larsen Civil Rights Act.

## STATEMENT OF FACTS

### Plaintiff's Disabilities and Medical Conditions

17.    Plaintiff Ronald O. Battle suffers from multiple serious medical conditions and disabilities that substantially limit one or more major life activities.

18.    Plaintiff has been diagnosed with Short Leg Syndrome, a congenital condition that affects his mobility and ability to perform certain physical tasks such as walking significant distances or standing for long periods of time.

19.    Plaintiff suffers from two tears in his meniscus and swelling in his knee, which causes chronic pain and limits his ability to walk, stand, and perform other physical activities.

20.    Plaintiff has been diagnosed with essential hypertension, hypothyroidism, obstructive sleep apnea, and lumbar degenerative disc disease, all of which substantially limit major life activities such as sleeping, walking, and

4

lifting, amongst other physical activities, and the functioning of his circulatory system.

21.    Plaintiff suffers from acute pain in his right knee, arthritis in his knees and back, and sciatic nerve damage and pain, which cause chronic pain and significantly limit his mobility and ability to perform physical tasks.

22.    Plaintiff has been diagnosed with morbid obesity with a BMI of 69.73 and weighs over 500 pounds, which substantially limits his ability to perform various physical activities and major life activities and impacts certain major bodily functions.

23.    Plaintiff's medical conditions are treated by Dr. Christina L. Clark, M.D., at Alsan Medical Clinic, P.C., located at 3130 Gratiot Avenue, Detroit, MI 48207.

24.    Due to his serious medical conditions, Plaintiff was approved for intermittent leave under the Family and Medical Leave Act (FMLA) effective February 28, 2023, through February 28, 2024, requiring 6-8 days per month off work as needed for his medical treatment.   Thus, Defendant was well aware of Plaintiff's disabilities long before the issues that arose as described below.

**Plaintiff's Employment History**

25.    Plaintiff was hired by Defendant MTA on September 13, 2021, as a City Fixed Route Transit Operator (bus driver) at an hourly wage of $21.40 per hour.

26. Plaintiff was initially classified as a part-time employee on September 20, 2021, and was subsequently promoted to "TEMP FT" (Temporary Full Time) status on January 9, 2023.

27. Plaintiff was assigned Employee Number 9743 and worked at MTA's Administration Training Center located at 1401 S. Dort Highway, Flint, MI.

28. Prior to the discriminatory actions described herein, Plaintiff successfully performed his duties as a bus driver without any accommodations, as neither his disabilities nor his weight impacted his ability to operate standard MTA buses.

29. As of July 2023, Plaintiff ranked 1 on MTA's Shift Pick List of Temporary Full Time Drivers and 2nd on the list of Part Time Seniority Drivers, demonstrating his seniority and standing within the organization.

30. Plaintiff was a member of Local 3437, Michigan AFSCME Council No. 25, AFL-CIO, with Darryl Huff serving as Union President.

## The June 2023 Discrimination Incident

31. In June 2023, Defendant MTA added regional routes to its service that required the use of compact buses, which were smaller than the standard buses Plaintiff had been successfully operating.

32. Despite being aware that Mr. Battle could not drive those buses comfortably due to his weight, and that he was hired for the city routes, Mr. Battle

6

was nonetheless reassigned to drive a bus on the regional route.  Mr. Battle's superiors and HR were well aware that Mr. Battle had difficulty with the compact buses.

33.    Although Mr. Battle found some buses that he could drive on the regional routes, General Manager, Kevin Galloway ("Galloway") informed him that they might not always be available for him.

34.    On or about June 28, 2023, HR Director Patrick Tesler approached Plaintiff and made discriminatory comments about Plaintiff's size and weight. Specifically, Tesler told Plaintiff that he "looked uncomfortable" driving the compact bus due to his size and directed Plaintiff to stop operating the compact buses.

35.    Tesler made the following discriminatory statement to Plaintiff: "You are a large male... I had to talk to an attorney about what I could offer you."

36.    Tesler then presented Plaintiff with three ultimatum "options": (1) **take unpaid leave until he lost weight**; (2) accept a demotion to a janitorial position; or (3) face termination. (emphasis added)

37.    None of these "options" constituted reasonable accommodations, and Defendant made no effort to engage in an interactive process to determine if any reasonable accommodations could enable Plaintiff to continue in his bus driver position.

7

38. Defendant's actions were based solely on Plaintiff's weight and physical appearance, not on any inability to perform the essential functions of his job with or without an accommodation.

### Forced Demotion to Janitorial Position

39. Faced with the threat of termination or unpaid leave despite his ability to continue performing his job as a bus driver utilizing most of the fleet of buses, Plaintiff felt he had no choice but to accept the demotion to a janitorial position to maintain his employment and income.

40. On July 17, 2023, Plaintiff was formally offered the janitorial position, which constituted a significant demotion in both status and compensation.

41. The demotion resulted in a substantial reduction in Plaintiff's hourly wage from $21.40 to $14.78 per hour, representing a decrease of 30.93%.

42. The janitorial position also reduced Plaintiff's hours and benefits, causing further financial harm.

43. The physical demands of the janitorial position exacerbated Plaintiff's existing disabilities, particularly his knee problems, back issues, and other mobility limitations.

### Work-Related Injury and Failure to Accommodate

44. On August 11, 2023, while performing janitorial duties, Plaintiff sustained a rotator cuff injury that was directly related to his work activities.

45.     On August 14, 2023, Plaintiff's physician provided a medical note imposing work restrictions, including no sweeping overhead and no lifting more than 15 pounds.

46.     When Plaintiff reported his work-related injury and presented his medical restrictions to Supervisor Bruce Pillar ("Pillar"), he was told that there was no work available within his restrictions.

47.     Supervisor Pillar further told Plaintiff that he could not receive workers' compensation benefits because "it would be hard to prove that the injury is work related," despite the injury occurring while performing his assigned duties.

48.     Defendant made no effort to engage in the interactive process to determine if reasonable accommodations could be made to allow Plaintiff to continue working within his medical restrictions.

49.     Instead of providing reasonable accommodations or even making an effort to determine if such accommodations could be made, Defendant effectively forced Plaintiff out of work entirely.

### Extended Unpaid Leave and Financial Hardship

50.     From August 11, 2023, through January 3, 2024, a period of nearly five months, Plaintiff was unable to work and received no income from Defendant.

51. During this extended period, Defendant made no efforts to find suitable work for Plaintiff within his medical restrictions or to engage in any interactive process regarding reasonable accommodations.

52. As a direct result of being without income for nearly five months, Plaintiff suffered severe financial hardship, including the loss of his home and car.

53. Plaintiff's extended absence from work was not due to any inability or unwillingness to work, but rather solely due to Defendant's failure to provide reasonable accommodations or suitable work within his medical restrictions.

## Return to Work in Reduced Capacity

54. On January 19, 2024, Defendant offered Plaintiff a position as a Substitute Driver at $19.40 per hour.

55. While this position represented a partial restoration of Plaintiff's wages, it was still $2.00 per hour less than his original bus driver wage of $21.40 per hour.

56. The Substitute Driver position also provided fewer guaranteed hours and reduced benefits compared to Plaintiff's original full-time bus driver position.

57. Plaintiff accepted this position out of financial necessity, despite the continued reduction in compensation and status.

## The August 2024 Incident and Retaliation

58. Three months after his return to work in the Substitute Driver position, on April 23, 2024, Plaintiff filed a charge of discrimination with the EEOC (Charge

10

No.: 471-2024-04085) and cross-filled with the MDCR alleging discrimination based on disability and weight.

59. On August 23, 2024, while operating an MTA bus, Plaintiff was involved in a motor vehicle accident in which he rear-ended another vehicle.

60. Plaintiff immediately took full responsibility for the accident and cooperated fully with MTA's investigation.

61. This was Plaintiff's first write-up or disciplinary action during his employment with MTA.

62. On August 28, 2024, MTA required Plaintiff to complete defensive driving training over the course of one week, which Plaintiff successfully completed.

63. Despite completing the required training, MTA prevented Plaintiff from returning to work for over two months through a series of delay tactics and administrative roadblocks.

**Pattern of Delay and Obstruction**

64. On September 26, 2024, when Plaintiff attempted to return to work, Peak Service Manager Michelle Ruffin told him that the "training department [had] not released [him] yet."

65. On October 10, 2024, Fixed Route Manager Kevin Galloway directed Plaintiff to "contact Human Resources" rather than allowing him to return to work.

11

66. On October 17, 2024, Plaintiff reached out to Sheila Johnson, secretary to COO Edward Burger, in an attempt to resolve his return to work status.

67. On October 22, 2024, HR Director Patrick Tesler told Plaintiff that MTA was "reviewing [his] return to work" but provided no timeline or specific requirements for his return.

68. Throughout this period, Plaintiff made numerous attempts to return to work through text messages and communications with various MTA management personnel, including Union President Darryl Huff, but was consistently given excuses and delays.

**<u>Disparate Treatment</u>**

69. Upon information and belief, other MTA drivers who had been involved in accidents, including a driver named "Shanice," were allowed to return to work immediately after completing their required training.

70. Plaintiff was treated differently from similarly situated employees who did not have a disability, were not in the Plaintiff's weigh class, and had not filed EEOC and MDCR charges of discrimination.

71. The extended delay in allowing Plaintiff to return to work was directly related to his filing of discrimination charges and constituted unlawful retaliation.

## Termination

72.   On October 25, 2024, COO Edward Burger terminated Plaintiff's employment.

73.   Burger stated that Plaintiff was "too unsafe for the company" and that MTA was "not confident in [his] ability to safely operate an MTA vehicle."

74.   These statements were pretextual and were not based on any legitimate safety concerns, as Plaintiff had successfully operated MTA vehicles for over three years with only one accident and other similarly situated employees had not been terminated after one accident

75.   Union President Darryl Huff failed to appear at the termination meeting despite Plaintiff's request for union representation.

76.   The termination was in direct retaliation for Plaintiff's filing of EEOC and MDCR charges of discrimination and his continued efforts to assert his rights under federal and state civil rights laws.

## Damages and Continuing Effects

77.   As a direct result of Defendant's discriminatory actions and retaliation, Plaintiff has suffered significant economic damages, including lost wages, lost benefits, and loss of seniority.

13

78. Plaintiff has also suffered severe emotional distress, humiliation, anxiety, and other non-economic damages as a result of the discrimination and retaliation.

79. Plaintiff's economic losses and emotional distress were further exacerbated by the loss of his home and vehicle during his extended period without income.

80. Plaintiff continues to suffer from the effects of Defendant's discriminatory actions and retaliatory conduct.

## CAUSES OF ACTION

### COUNT I
### (Disability Discrimination Under the Americans with Disabilities Act)

81. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

82. Plaintiff claims Defendant violated Titles I and V of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

83. The Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

84. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his disabilities, including but not limited to forcing him to accept a demotion based on his physical appearance and weight, reducing his compensation, and ultimately terminating his employment.

85. Defendant's conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights under the ADA.

86. As a direct and proximate result of Defendant's discriminatory practices, Plaintiff has sustained significant economic and compensatory damages.

### COUNT II
### (Failure to Accommodate and Engage in Interactive Process Under the Americans with Disabilities Act)

87. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

88. Defendant violated the Americans with Disabilities Act by failing to provide Plaintiff with reasonable accommodations for his disabilities and by failing to engage in the interactive process.

89. When Plaintiff sustained a work-related rotator cuff injury and provided medical restrictions, Defendant failed to engage in any interactive process

to determine what reasonable accommodations could enable Plaintiff to continue working.

90. Defendant made no effort to explore alternative work assignments, modified duties, or other reasonable accommodations that would have allowed Plaintiff to work within his medical restrictions.

91. Defendant's failure to accommodate and engage in the interactive process resulted in Plaintiff being forced out of work for nearly five months without pay.

92. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has sustained significant economic and compensatory damages.

## COUNT III
### (Retaliation Under the Americans with Disabilities Act)

93. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

94. Defendant violated the ADA by retaliating against Plaintiff for filing charges of discrimination with the EEOC.

95. After Plaintiff filed his first EEOC charge on April 23, 2024, Defendant subjected him to a pattern of delay and obstruction when he attempted to return to work following completion of required defensive driving training.

96.     While other similarly situated employees were allowed to return to work immediately after completing training, Plaintiff was subjected to over two months of delays and administrative roadblocks.

97.     Defendant ultimately terminated Plaintiff's employment on October 25, 2024, in direct retaliation for his protected activity of filing EEOC charges.

98.     Defendant's conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights under the ADA.

99.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has sustained significant economic and compensatory damages.

## COUNT IV
### (Weight Discrimination Under the Elliott-Larsen Civil Rights Act)

100.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

101.    Defendant violated the Elliott-Larsen Civil Rights Act, MCL 37.2101, et seq., by discriminating against Plaintiff based on his weight.

102.    Defendant's HR Director made discriminatory statements about Plaintiff's size and weight, stating "you are a large male" and forcing him to accept a demotion based solely on his physical appearance.

103.    Defendant treated Plaintiff differently from other employees based on his weight, subjecting him to disparate treatment in terms and conditions of employment.

17

104. Defendant's conduct as described herein was intentional and done with forethought and with a total disregard for Plaintiff's rights under Michigan law.

105. As a direct and proximate result of Defendant's discriminatory practices under the Elliott-Larsen Civil Rights Act, Plaintiff has sustained significant economic and compensatory damages, and Plaintiff also seeks punitive damages.

## COUNT V
## (Retaliation Under the Elliott-Larsen Civil Rights Act - Section 37.2701)

106. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

107. Defendant violated the Elliott-Larsen Civil Rights Act by retaliating against Plaintiff for engaging in protected activity.

108. Plaintiff engaged in protected activity by filing charges of discrimination with the MDCR alleging disability and weight discrimination.

109. Defendant took adverse employment actions against Plaintiff, including delayed return to work and ultimate termination, because of his protected activity.

110. There was a causal connection between Plaintiff's protected activity and the adverse employment actions taken by Defendant.

111. As a direct and proximate result of Defendant's retaliatory conduct under the Elliott-Larsen Civil Rights Act, Plaintiff has sustained significant economic and compensatory damages.

18

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demands judgment in his favor against Defendant as follows:

A. Declaring that Defendant has engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, and the Elliott-Larsen Civil Rights Act;

B. Enjoining Defendant from continuing to engage in unlawful discriminatory and retaliatory practices;

C. Awarding Plaintiff compensatory damages for all back pay, lost wages, lost benefits, and other economic losses resulting from Defendant's discriminatory and retaliatory conduct;

D. Awarding Plaintiff front pay and other prospective economic relief;

E. Awarding Plaintiff compensatory damages for emotional distress, pain, suffering, humiliation, mental anguish, and other non-economic harm;

F. Awarding Plaintiff punitive damages;

G. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable statutes;

H. Awarding Plaintiff pre- and post-judgment interest;

I.  Ordering Defendant to expunge from Plaintiff's personnel records any references to the discriminatory demotion, disciplinary actions, and termination that violated federal and state law; and

J.  Awarding Plaintiff such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  July 30, 2025
           Southfield, MI

**HARDING MAZZOTTI, LLP**

By:  *Kelly A. Magnuson*
       _____

Kelly A. Magnuson, Esq. (Bar ID: 3816185)
*Attorneys for Plaintiff*
2000 Town Center Suite 1900
Southfield, MI 48075
Tel.: (518) 556-3402
Email: Kelly.Magnuson@1800law1010.com

TO:   MASS TRANSPORTATION AUTHORITY
         1401 South Dort Highway
         Flint, MI 48503

20